**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | **) Bankruptcy Case No.** 26-20914-CMB |
| Pennsylvania Brewing Company, Inc., | ) |
| **Debtor,** | ) **Chapter** 11 |
| | ) |
| Pennsylvania Brewing Company, Inc., | ) |
| **Movant,** | ) |
| **vs.** | ) |
| No Respondent. | ) **Document No.** |

## DEBTOR'S EXPEDITED MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASE

**AND NOW,** comes the Debtor and Debtor-in-Possession, Pennsylvania Brewing Company, Inc., by and through its counsel, Calaiaro Valencik, and respectfully requests that this Honorable Court enter an order, on an expedited basis, dismissing its Chapter 11 bankruptcy case pursuant to sections 105(a), 305(a), 349(b), 554(a), and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017, 2002, 2016, 6007, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of an order approving the structured dismissal of this case and granting related relief (the "Dismissal Order"), and in support thereof avers as follows:

1.      First Commonwealth Bank, not the estate, is bearing the economic burden of preserving the value of its collateral and keeping this case afloat.

2.      When the Debtor filed this chapter 11 case, its primary concern was to avoid any disruption of its business operations.

3.      The Debtor has worked closely with its secured lender, FCB, to achieve that objective.

4.     While the Debtor had hoped that a reorganization and retention of current ownership would be viable, while providing a meaningful recovery to its unsecured creditors, that is unfortunately not the case.

5.     Without the ability to confirm a feasible plan, let alone fund ongoing administrative costs associated with this case, the Debtor has no choice but to seek the prompt dismissal of this case.

6.     While the Debtor is disappointed in this outcome, it nevertheless believes that, under these circumstances, dismissal provides the most efficient and cost-effective wind-down alternative and serves the best interests of its estate and creditors.

7.     Thus, the Debtor has determined that a structured dismissal is the most expeditious and cost-effective strategy to wind down the Debtor's affairs and maximize recoveries for holders of allowed administrative expense claims ("Administrative Claims") and secured claims.

8.     In accordance with the United States Supreme Court's decision in Czyzewski v. Jevic Holding Corp. (In re Jevic), 580 U.S. 451 (2017), all distributions will strictly comply with the priority scheme established by the Bankruptcy Code, including the absolute priority rule and sections 507 and 726 of the Bankruptcy Code.

9.     Dismissal will result in greater recoveries for holders of Administrative Claims and will ensure a faster and less costly completion of the case as compared to a conversion to Chapter 7.

10.     While the fees and commissions incurred by a chapter 7 trustee and its professionals alone justify dismissal of these cases, conversion to chapter 7 would also likely further delay distributions to holders of allowed Administrative Claims and secured

claims, as a chapter 7 trustee would need to spend time familiarizing itself with these cases through the engagement of new professionals.

11.     The Dismissal Order sets forth the process for dismissing the Debtor's case through a structured, court-supervised process that balances the interests of holders of Administrative Claims in receiving prompt distributions, with the Court's interest in ensuring the Debtor's limited assets are distributed in a fair manner that comports with the requirements of the Bankruptcy Code.

12.     Accordingly, the Debtor, after consultation with the United States Trustee's Office, seeks entry of the Dismissal Order dismissing its case pursuant to sections 105(a), 305, 330, 349, and 1112(b) of the Bankruptcy Code and Rules 1017, 2002, 2016, 6007, 9013, and 9014 of the Bankruptcy Rules, effective upon the filing of a statement of final distribution of the post-petition administrative expenses.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

14.     This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

15.     Venue of this case and this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

16.     The statutory predicates for the relief requested are sections §§ 105(a), 305(a), 349(b), 554(a), and 1112(b) of the Bankruptcy Code;, Rules 1017,2002, 2016, 6007, 9013, and 9014 of the Bankruptcy Rules;"" and Local Rules 1017-1 and 9014-1.

**FACTUAL BACKGROUND**

17.     Pennsylvania Brewing Company, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the "Bankruptcy Code", in the United States Bankruptcy Court for the Western District of Pennsylvania on March 31, 2026 (the "Petition Date").

18.     The Debtor has continued in possession of its property and management of its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

19.     No trustee or examiner has been appointed, and no official committee of unsecured creditors has been formed.

20.     "FCB" holds a lien on substantially all of the Debtor's personal property, perfected by a filed UCC-1 financing statement. On July 1, 2026, FCB filed Proof of Claim No. 12, asserting a secured claim in the amount of $5,073,235.16.

21.     Debtor scheduled the value of the FCB's collateral at $3,304,677.97. The FCB's claim therefore exceeds the value of its collateral, and its blanket lien encumbers all of the Debtor's assets, leaving no unencumbered equity for the benefit of any other creditor.

22.     Prior to the Petition Date, FCB commenced an action against the Debtor and related parties in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. GD-25-003467.

23.     Because the Debtor's assets are fully encumbered by the FCB's lien, there are no funds or unencumbered assets available to make any distribution to holders of general unsecured claims, and no such creditor will receive any distribution in this case.

24.    Additionally, the real property from which the Debtor formerly operated was owned by a non-debtor entity, was not property of the Debtor, and was not property of this estate.

25.    That real property has already been foreclosed upon and is no longer available to the Debtor or its estate.

26.    Following foreclosure, FCB, as owner and landlord of the property, has continued maintaining the premises and has undertaken efforts to market both the real estate and the business as a going concern.

27.    FCB has incurred the burdens associated with preserving the value of its collateral and has worked cooperatively with the Debtor to identify potential purchasers.

28.    Consequently, there is no bankruptcy purpose that would be advanced by maintaining this case solely to facilitate a sale that is already being pursued outside of bankruptcy.

29.    The Debtor has not sought retention of a broker because it lacks the resources to employ one. Any brokerage commission would further erode value that is already insufficient to satisfy FCB's secured claim. Instead, FCB and the Debtor have jointly pursued potential purchasers through existing industry contacts and ongoing discussions with interested parties.

30.    The Debtor and FCB have been working toward a sale of substantially all of the Debtor's remaining assets at a discussed purchase price of approximately $300,000.

31.    As of the date of this Motion, however, no sale agreement has been reached, and no transaction is in place.

32.     Any such sale would yield proceeds far less than the amount of the FCB's claim, leaving nothing for any other creditor.

33.     In connection with the wind-down of this case and in consideration of the Debtor's efforts in preserving and administering the FCB's collateral, FCB has agreed to a carve-out of $15,000 from its collateral (the "Carve-Out"), to be paid to Calaiaro Valencik, counsel to the Debtor, on account of attorneys' fees.

34.     This distribution will not be made until a sale is actually consummated.

35.     The Debtor has reviewed its circumstances and determined that it has no reasonable likelihood of rehabilitation and is unable to propose or confirm a plan of reorganization.

36.     The Debtor is not seeking additional financing, has no source of replacement premises, cannot satisfy lease obligations, has no committed purchaser, and lacks sufficient unencumbered assets to fund a plan. The only remaining path is liquidation of substantially all assets. Where liquidation is inevitable and incapable of producing a dividend to unsecured creditors, continued administration of this case serves no rehabilitative purpose.

37.     The Debtor and FCB agree that dismissal of this case, rather than conversion to Chapter 7, is in the best interests of creditors and the estate.

## RELIEF REQUESTED

38.     The Debtor respectfully request that this Court enter an order dismissing the above-captioned bankruptcy case.

**A.      Dismissal under 1112(b) is appropriate**

39.     Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall…dismiss a case under this chapter…for cause." 11 U.S.C. § 1112(b)(1).

40.     Cause includes substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. See 11 U.S.C. § 1112(b)(4)(A).

41.     The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case. See H.R. Rep. No. 109-31(I), at 442, as reprinted in 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); see also In re Preferred Door Co., 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); In re Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991) (stating that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); In re Koerner, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984) (same).

42.     Prior to the enactment of the BAPCPA, a bankruptcy court had the discretion, pursuant to its broad equitable powers, to dispose of a debtor's case, including by means of dismissal; however, a court was not mandated, as is the case now, to dismiss a case upon the showing of cause. See H.R. Rep. No. 95-595, at 405 (1977), as reprinted

in 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787.

43.    Thus, the amendments to section 1112(b) limit the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause. See In re 3 Ram, Inc., 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006).

44.    For the reasons set forth below, the Debtor submits that the Court must convert or dismiss this case because "cause" exists to do so under section 1112(b)(1) of the Bankruptcy Code.

45.    Further, dismissal, not conversion to cases under chapter 7, is in the best interests of the Debtor, its creditors, and its estate.

**B.    "Cause" Exists to Dismiss This Case Because the Debtor is Unable to Confirm a Chapter 11 Plan**

46.    Bankruptcy Code section 1112(b) enumerates sixteen examples of "cause," *including* substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and inability to effectuate a plan. 11 U.S.C. § 1112(b)(4)(A) and (M).

47.    Dismissal is appropriate where a party shows that (a) there is a substantial or continuing loss to or diminution of value of the estate and (b) the debtor does not have a "reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

48.    "As provided in the plain language of the Code, courts have held that if one of the grounds for dismissal or conversion is § 1112(b)(4)(A) . . . the § 1112(b) inquiry ends; the case must be converted or dismissed." In re Korn, 523 B.R. 453, 465 n.28 (Bankr. E.D. Pa. 2014).

49.     These enumerated examples of "cause," however, are not exhaustive and the court is free to find other causes for dismissal under equitable grounds. See C-TC 9th Ave. P'ship v. Norton Company (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive"); In re Syndicom Corp., 268 B.R. 26, 48 (Bankr. S.D.N.Y. 2001) ("It is well established, consistent with the plain meaning of [section 1112(b)], that the circumstances following the 'including' in each statutory provision are not exclusive"); In re Lamar Estates, Inc., 6 B.R. 933, 936 (Bankr. E.D.N.Y. 1980) ("In determining what constitutes cause . . . the Court is not limited to those grounds enumerated in section 1112(b). The Legislative history makes this abundantly clear"); Frieouf v. U.S., 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is nonexhaustive).

50.     Cause exists where there is no "reasonable possibility of a successful reorganization within a reasonable period of time." In re Commonwealth Renewable Energy, Inc., 550 B.R. 279, 283 (Bankr. W.D. Pa. 2016).

51.     The Third Circuit has held that the "inability to effectuate a plan" remains a viable basis for dismissal or conversion because the listed examples of cause are not exhaustive. In re American Capital Equipment, LLC, 688 F.3d 145, 161 (3d.Cir.2012).

52.     Where a debtor has no viable prospect of confirming a plan, there is "no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy legal rights"." Commonwealth Renewable Energy, at 283.

53.     Here, the Debtor satisfies the two-fold inquiry of section 1112(b)(4)(A) of the Bankruptcy Code such that dismissal is required. First the Debtor's assets are subject to a blanket lien held by FCB, which fully encumbers any value in the estate. The Debtor ceased operating at its airport location and sales have been drastically reduced because

of the closure. The property the Debtor operated out of was foreclosed upon and the Debtor is unable to make required lease payments. There is no reasonable likelihood of rehabilitation and no reasonable possibility of a successful reorganization within a reasonable time.

54.    Second, there is a continuing loss or diminution to the value of the estate insofar as professional fees and other administrative costs of operating this case are continuing to accrue, without any corresponding benefit to the estate.

55.    The fact that there will be no distribution to unsecured creditors is an indication of an "absence of a reasonable likelihood of rehabilitation under section 1112(b)." See, e.g., In re Cohoes Industrial Terminal, Inc., 65 B.R. 918, 922 (Bankr. S.D.N.Y. 1986) (indicating that where there is no distribution for unsecured claims, there is an absence of a reasonable likelihood of rehabilitation).

56.    In addition to the non-exhaustive list of grounds for dismissal outlined by section 1112(b)(4) of the Bankruptcy Code, courts may consider the "totality of the circumstances" in determining whether sufficient cause exists. See In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999) (finding that the factors enumerated in section 1112(b)(4) are "not exhaustive and … a court may consider whether other facts and circumstances qualify as 'cause'"); In re Gateway Access Sols., 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise'") (quoting In re Brown, 951 F.2d 564, 572 (3d Cir. 1991)); In re 3 Ram, Inc., 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has

not") (citation omitted); accord In re Frieouf, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating

that section 1112(b)'s list is non-exhaustive).

**C.     Dismissal is in the Best Interests of Creditors and the Debtor's Estate**

57.     For the above reasons, the Debtor believes that there is sufficient cause to

dismiss this case in the manner set forth below and that such dismissal is in the best

interests of all creditors and the Debtor's estate.

58.     Once a court determines that cause exists to dismiss a debtor's chapter 11

case, the court must evaluate whether dismissal or conversion is in the best interests of

the debtor's creditors and the estate. 11 U.S.C. § 1112(b)(1); see, e.g., In re Superior

Siding & Window, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court

is required to consider this second question of whether to dismiss or convert"); In re

Mazzocone, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995) ("There is no dispute by any party

regarding the presence of sufficient 'cause' to dismiss or convert this case from a Chapter

11 case.... Therefore, the only issue before us is determining whether conversion or

dismissal best satisfies the [best interests of the creditors test]").

59.     Numerous courts, both in this district and throughout the country, have

approved orderly dismissals under similar circumstances to the Debtor's case, where the

Debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or where the

costs associated with plan confirmation would eliminate the possibility of a meaningful

creditor recovery. See, e.g., In re Wilson Creek Energy, LLC, et al., Case No. 25-70001

(JAD), D.I. 671 (Bankr. W.D. Pa. 2025); In re Claim Jumper Acquisition Co., LLC, et al.,

Case No. 22-21941 (GLT), D.I. 337 (Bankr. W.D. Pa. 2022); In re Rider Hotel, LLC, Case

No. 22-10522 (JTD), D.I. 726 (Bankr. D. Del. 2024); In re YouFit Health Clubs, LLC, Case

No. 20-12841 (MFW), D.I. 966 (Bankr. D. Del. 2021). Accordingly, dismissal of the Chapter 11 Case is in the best interests of the Debtor's estate and creditors.

**D.    Alternatively, dismissal under Section 305(a) is warranted**

60.    Alternatively, the Debtor avers that cause exists to dismiss the bankruptcy under Section 305(a) of the Bankruptcy Code, which provides for dismissal if "the interests of creditors and the debtor would be better served by such dismissal…". 11 U.S.C. § 305(a)(1).

61.    In applying section 305(a), courts have considered a wide range of factors, including, but not limited to:

    i.    economy and efficiency of administration;

    ii.    whether federal proceedings are necessary to reach a just and equitable solution;

    iii.    whether there is an alternative means of achieving an equitable distribution of assets; and

    iv.    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

See In re Crown Village Farm, LLC, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24 (Bankr. D. Del. June 12, 2009) (enumerating section 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); see also In re AMC Investors, LLC, 406 B.R. 478, 488 (Bankr. D. Del. 2009). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." Mazzocone, 200 B.R. at 575.

62.     Those conditions are met here. Dismissal serves the Debtor's interest in an orderly, cost-effective wind-down and serves creditors' interests because no creditor will receive any distribution in this case regardless of whether it is dismissed or converted, while the continued administration of the estate would only generate additional administrative expense. Because the Debtor's assets are fully encumbered and no distribution is available to any other creditor, dismissal does not produce a windfall to FCB at the expense of the Debtor or other creditors.

63.     Creditors are no worse off following dismissal because there is no realistic prospect of a distribution through this bankruptcy case.

64.     By contrast, dismissal eliminates quarterly United States Trustee fees, future professional fees, and other administrative expenses that would continue to diminish any remaining value.

65.     Creditors retain their state-law remedies while avoiding the expense of continued administration of a futile chapter 11 proceeding.

**E.      Conversion is inappropriate under the circumstances of this case.**

66.     The Debtor avers that conversion of the case to a chapter 7 would not be in the best interest of creditors.

67.     Conversion would merely substitute a chapter 7 trustee for ongoing efforts already being undertaken by FCB and the Debtor.

68.     Any trustee would face the same impediment confronting the Debtor, namely, that all meaningful assets are subject to FCB's blanket lien and any sale proceeds would be insufficient to satisfy FCB's secured claim.

69.     A chapter 7 trustee would therefore incur administrative expenses without creating value for unsecured creditors.

70.     As stated above, FCB's lien fully encumbers all the Debtor's assets. There would be no estate for a chapter 7 trustee to administer, nor could there be a meaningful distribution to general unsecured creditors. As it is, the administrative expense claims owed to Debtor's counsel may only be paid through a carveout provided by FCB if a sale occurs. There are no funds to pay for a chapter 7 trustee. See Commonwealth Renewable Energy, 550 B.R. at 284-85 (denying to convert chapter 11 case when determined that a chapter 7 trustee would provide no value to offset associated costs).

**F.      The proposed carveout is permissible.**

71.     As disclosed above, FCB has agreed to a carveout of its collateral to pay Debtor's counsel. This proposed carveout does not violate the Bankruptcy Code priority scheme or run afoul of Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 137 S. Ct. 973, 197 L. Ed. 2d 398 (2017).

72.     First, the proposed carveout is funded from FCB's collateral, not unencumbered estate property. Where a secured creditor's claim absorbs all assets, no priority creditor is harmed when the secured creditor agrees to share a portion of its own collateral. See In re Nuclear Imaging Systems, Inc., 270 B.R. 365 (Bankr. E.D. Pa. 2001).

73.     Second, the carveout does not circumvent the priority scheme because Debtor's counsel would be entitled to an administrative priority claim entitled to payment prior to any other class of creditors.

### DISCLOSURE PURSUANT TO W.D.PA.LBR 1017-1(a)

74.     In accordance with W.D. Pa. LBR 1017-1(a), the Debtor discloses the reasons for the requested dismissal as set forth above. The Debtor further discloses the arrangement made in connection with this request for dismissal: the Secured Lender has agreed to the $15,000 Carve-Out from its collateral, payable to Calaiaro Valencik, counsel

to the Debtor, on account of attorneys' fees, as described above. Except for the Carve-Out and the parties' shared understanding that dismissal is the appropriate disposition of this case and their ongoing efforts toward a consensual sale of the Debtor's assets, no other arrangement or agreement has been made with any creditor or other person in connection with this request for dismissal, and no other payment or consideration, lump sum or otherwise, has been received or is anticipated.

**REQUEST FOR EXPEDITED CONSIDERATION**

75.    The Debtor is requesting that this Court consider this matter on an expedited basis.

76.    As stated above, there is cause for dismissal. The Debtor can no longer sustain daily operations and must promptly transition the operations of the business to the prospective purchaser under a management agreement to preserve the going-concern value of the business.

77.     The remaining value of the enterprise is largely dependent upon preserving its going-concern status and avoiding operational interruption.

78.    Maintaining this bankruptcy case while no path exists toward rehabilitation risks destroying that value through delay and administrative expense. Thus, prompt dismissal will facilitate the parties' ability to transition operations and maximize realization upon the remaining assets.

79.    If this matter is not heard on an emergency basis, the Debtor will be irreparably harmed. The Debtor will likely suffer a lapse in operations that could damage its brewing equipment, cause the loss of all product currently being brewed, and cause the Debtor to miss key seasonal events such as Oktoberfest, any of which would be catastrophic to the remaining value of the business.

80.    The need for the emergency or expedited relief is not caused by lack of diligence on the part of the Debtor or its attorneys.

**WHEREFORE**, the Debtor, Pennsylvania Brewing Company Inc., respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto, (i) dismissing this Chapter 11 case pursuant to 11 U.S.C. § 1112(b) and (ii) granting such other and further relief as the Court deems just and proper.

**Respectfully submitted,**

**DATE:** August 3, 2026                    **CALAIARO VALENCIK**

**BY:** /s/ Andrew K. Pratt
**Andrew K. Pratt, Esq.     PA I.D. No. 328784**

**555 Grant Street, Suite 300**
**Pittsburgh, PA  15219**
**Phone:        (412) 232-0930**
**Fax:          (412) 232-3858**
**Email:        apratt@c-vlaw.com**